## Mahon's Estate.

*Husband and wife — Collection of wife's income by husband — Gift—*
*Agency—Presumption—Evidence.*

Where a husband collects the income from his wife's real estate, and
receipts therefor as her agent, it will be presumed after the wife's death
that he held the money thus collected not as a gift, but as her agent, and
if he is his wife's executor he will be bound to apply the money, or so
much of it as may be necessary to the payment of taxes which had accrued
during the year preceding the wife's death. Even if it could be presumed
that the money was held by the husband as a gift, such voluntary gift could
not be sustained against a debt that must have been foreseen as inevita-
ble.

Argued March 10, 1902. Appeal, No. 281, Jan. T., 1901, by
Thad M. Mahon, from decree of O. C. Franklin Co., dismiss-
ing exceptions to auditor's report in Estate of Martha M. Mahon,
deceased. Before DEAN, FELL, BROWN, MESTREZAT and POT-
TER, JJ. Affirmed.

Exceptions to report of J. R. Ruthrauff, Esq., auditor.

JOHN STEWART, P. J., filed the following opinion :

This matter comes before us on exceptions to an auditor's
report.

Mrs. Martha M. Mahon was at the time of her decease the
owner of several pieces of real estate in Chambersburg yielding
a considerable income. She died January 30, 1892. By her
will she devised her entire estate to her husband, Thad M.
Mahon, and appointed him her executor. Subsequent to the
death of Mrs. Mahon suit was brought against Mr. Mahon, as
executor, for the recovery of certain unpaid taxes assessed upon
her real estate and which were due and owing at the time of
her death. This action resulted in a judgment against the es-
tate for $193.70. To enforce its collection, the plaintiff therein,
by citation and order of the court, required an accounting by
the executor. In his account the executor avers no assets of
any kind, but claims credit for a considerable sum expended
in the way of counsel fees, and expense incurred in defending
against the claim for taxes. Exceptions having been filed to

the account, the matter was referred to J. R. Ruthrauff, Esq., as auditor. The effort before the auditor was to show a personal estate unaccounted for, and to charge accountant therewith. While several items of debit were found, one only is considerable in amount, and being in itself more than adequate to meet the demands of the contesting creditor if sustained, it only need be considered.

The auditor has surcharged accountant with $4,947.94, being the net amount of rents and income from the wife's real estate, which the evidence shows passed directly into his hands from the parties who owed it, during his wife's lifetime. It is the exception to this surcharge that we propose to consider. The accountant does not deny the receipt of the money, nor does he question the amount; but he seeks to avail himself of the rule that presumes a gift by the wife to the husband of the income of her estate in cases where he has received it with her knowledge and acquiescence.

Since this rule is an equitable one, not invariable but yielding in its application to circumstances, it would have been helpful, if a determination of this case on its actual merits were desired, had the facts been more fully developed in the testimony. The auditor has made all the specific findings justified by the evidence, but these narrow the issue within very contracted limits. What the business of the husband was, what his circumstances and condition in life were, who composed his family, and in what manner the family life was lived and its affairs conducted, all these were proper subjects of inquiry; and in every case where this rule has been applied or considered, some, if not all of these facts have been matters of evidence. We are denied all such information, and are required to reach our conclusion from these few simple facts: (1) During the whole period of the wife's ownership of the real estate, beginning in 1885, the rents and income therefrom passed directly into the hands of the husband from the persons owing the same; (2) the husband when such payments were made to him invariably, and so continuing until his wife's death, gave to the parties paying, written receipts signed by himself, in his own name, as attorney for Martha M. Mahon; (3) excluding the money thus derived as income, the wife died without any personal estate whatever; and there is due and owing from her

estate a judgment for $193.70, recovered on a claim for unpaid taxes assessed upon her real estate, which with interest and costs added amounts now to $274.90.

Limited to these meager facts, it is easy to see how a strictly legal determination of the case may not accord with the actual merits; for as the case is thus presented, it resolves itself into a question of what the law will presume from the transaction, whether a gift of this income to the husband, or a relation of debtor and creditor, with respect thereto. Neither side has offered any evidence to overcome a presumption adverse to its own claim, and it follows necessarily that to lead in the start is to win in the race. We take the case as it is presented.

The general rule that implies a gift of income to the husband where he has received it with the wife's knowledge and acquiescence admits of no dispute and needs no discussion. No more does the other rule, that where one is shown to have received the money of his principal in the course of an admitted agency, the law will imply an indebtedness on his part to that extent. In either case, the legal presumption must prevail until overcome by evidence; and the question always is, how, that is to say, in what capacity was the money received by the party sought to be charged? In the one case, if as husband, then a gift is presumed; in the other, if as agent or attorney, a debt is implied. In every reported case, so far as our research has extended, in which the rule has been considered and applied to raise a presumption of gift to the husband, the money has been shown to have been received by him as husband and in no other capacity without suggestion that it was for the wife or on her behalf. The mere fact that a husband's hand received the money, does not of itself in all cases, raise a presumption of gift. It may or may not, be sufficient for that purpose. If there is nothing in the case to show that the party stood in any other relation than that of husband, the law will presume that it was as husband he received the money and a gift will be implied. But, he may be more than husband; he may be the wife's agent or trustee as well; and when such double relation exists, the capacity in which the money was received becomes a question of fact to be ascertained like any other. And this determination must be made before any presumption, one way or another, can be invoked. The distinction here made is a

very obvious and necessary one. Except it be allowed, the relation of principal and agent between husband and wife in the management of the latter's estate would be quite impracticable. But we have express authority for it. In Moyer's Appeal, 77 Pa. 485, the court adopting the language used in 2 Kent's Com. 138, says: "The property must come under his (the husband's) actual control and possession quasi husband. His receiving it as executor or trustee is not a sufficient reduction of it to his possession to prevent its surviving to his wife: Baker v. Hall, 12 Vesey, 497; Wall v. Tomlinson, 16 Vesey, 413." Further on in the opinion Mr. Justice MERCUR says: "Declarations made by the husband at the time of receiving the wife's money or choses in action, or afterwards, clearly evincive of the intent at the moment of reduction to possession, are sufficient to repel the presumption of personal acquisition by him." True, in the case referred to, it was a question of conversion by the husband, and related to the principal, not as distinguished from income; but it is impossible to suggest any sufficient reason why the capacity in which the money is received should be held an important, and indeed as we have seen, a determining consideration in the one case and not in the other.

In Caton v. Rideout, 1 Mac. & G. 599, we find the rule recognized and impliedly approved with respect to income alone. There the husband was one of several trustees for the wife. It was sought to charge him with certain income that he had received, and the fact of his trusteeship was relied upon to avoid the rule. This contention was sustained by the vice chancellor; but, on review, Lord COTTENHAM held that the fact of the husband being trustee at the time was immaterial, because, "it appeared upon the evidence that payment was made to the husband as husband and not as trustee." The law of the vice chancellor was not questioned, but because his law did not fix the facts of the case his decision was reversed.

Assuming the rule of law to be as we have stated it, how stands the present case as to its facts? Did Mr. Mahon receive the money with which he has been charged by the auditor as husband or as attorney in fact for his wife? The money is traced into his hands by receipts given by himself to the parties who paid it and are uniformly subscribed, "Thad M. Mahon, Atty. for Martha M. Mahon." What is this but a declaration

made by himself, repeated with each transaction, that it was as agent and not as husband that he was receiving the money? It is idle to say that the circumstance is without significance. Would it be without significance as a matter of evidence in a controversy between Mr. Mahon and some one other than his wife in which his agency was in issue? This will not be contended for a moment; and why should it not have the same force and effect in one case as in the other? It was pressed upon us in the argument that the receipts were signed by Mr. Mahon as attorney for his wife merely to make the parties who paid the money feel secure as against further demands. But this is only a theory of the counsel with absolutely nothing in the evidence to support it. Upon this point the case rests wholly and entirely upon the receipts unexplained by a single word of testimony. We must take them to mean just what is therein expressed, and the conclusion cannot be avoided that they are express admissions of agency. This being so, no presumption of a gift to the husband arises; but, on the contrary, a debt is implied from the transaction. It is possible that the husband's course of dealing with this money, after he had received it, was such that the law would imply a subsequent gift: but we are not permitted to know anything in regard to the use he made of it; we have not a fact before us in regard to the money except that he received it, and said he received it as attorney. By the course of the evidence on both sides the case is made to turn on presumptions which the law raises from the transaction, and we are of opinion that these presumptions leave Mr. Mahon a debtor to his wife's estate to the amount of income he is shown to have received.

We rest our decision of this case upon the reasons already stated; and yet it presents a feature not referred to in any of the arguments which ought not to be overlooked. In our judgment it compels a like conclusion. This controversy is not between the husband and the wife's representative: in the shape it has taken, it is between Mr. Mahon and creditors of his wife who seek to subject to their claims a fund, which he insists was a gift to himself from the debtor. Under such circumstances can a gift be presumed? And if it be, what will such gift avail, when to sustain it would be to deprive meritorious creditors of their just dues? We do not insist that the presumption would

not arise, such might be the case; but certainly the law would not be eager to raise it and would accept as sufficient to overcome and defeat it, much slighter evidence than otherwise would be required. This consideration gives additional weight to the receipts as matters of evidence over and above what we allowed them, and it is for this reason we refer to it. But presuming the gift, the case would stand thus: at the time of the wife's death she was indebted for taxes on her real estate, a debt that must have been foreseen as inevitable; during the year next preceding her death she gives to her husband the entire income from her real estate, a sum largely in excess of her indebtedness and dies penniless herself as regards personal estate. It ought to be apparent without argument that the effect of such voluntary gift, if sustained, would be to hinder, delay and defraud the creditor. If it be said that the real estate itself was there to answer the claim of creditors, the reply must be as before, that we are not permitted to know anything in regard to the parties, their circumstances or their property. With respect to these things the record is silent. Whether any value passed to the husband under the devise from his wife, whether the estate was free or incumbered, whether in view of all the facts as they were and are, the gift was disproportioned to the donor's ability, these are not matters of presumption, but the facts with respect thereto, are to be established by evidence; they cannot be ascertained in any other way. From all that is before us, we would pronounce a gift made under the conditions stated, fraudulent and void as to the creditor.

We conclude that the item of rents and income of the wife's estate received by Mr. Mahon is a proper surcharge against the accountant.

The exceptions which relate to other matters of the report do not call for any discussion.

Now, July 29, 1901, all the exceptions filed to the report are dismissed, and it is ordered, adjudged and decreed that the report of the auditor be confirmed.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Walter K. Sharpe*, of *Sharpe & Elder*, with him *Charles A.*

*Suesserott*, for appellant, cited : McGlinsey's App., 14 S. & R. 64; Towers v. Hagner, 3 Wharton, 48; Hauer's Est., 140 Pa. 420.

*Gehr & Gehr*, with them *O. C. Bowers* and *Bonbrake & Zacharias*, for appellee.

PER CURIAM, March 24, 1902:

The opinion of the learned judge of the court below clearly and amply vindicates his decree on the exceptions to the auditor's report. On that opinion we rest our affirmance.

Decree affirmed.

---

# Henninger *v.* Henninger, Appellant.

*Will—Devise—Life estate—Power of sale.*

There is no repugnance between a devise for a life term, and a superadded power of sale. Both may operate, and when the power is executed, it is, where it is not otherwise ordered, simply a substitution of one kind of property for another, the estates of those interested remaining the same in the thing substituted.

Testator devised real estate to his wife for life with the right in her, however, to use, sell and dispose of any or all of said estate for the use and support of herself and H. He further directed as follows : " Should my wife die before H. my will is that such portion as shall then remain shall be for the use and support of H., with the right in her to sell and dispose of the same for her maintenance and support, and upon the death of both my wife and H., and after the payment of their funeral expenses, what portion of my estate shall then remain shall vest in and become the absolute property of my sister E., and her heirs." *Held,* that H. could contract to sell and make a valid title in fee simple to the land passing under the will of testator.

202     207
c211    a290
e 27 SC   13
e 27 SC   14

Argued March 11, 1902. Appeal, No. 339, Jan. T., 1901, by defendant, from judgment of C. P. Franklin Co., Sept. T., 1901, No. 80, on case stated, in suit of Elizabeth Henninger v. F. A. Henninger. Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Case stated to determine the marketable title to real estate.